# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEANNA L. NORMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-13-345-SPS |

## OPINION AND ORDER

The claimant Deanna L. Norman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born May 22, 1963, and was forty-eight years old at the time of the administrative hearing (Tr. 39, 128). She completed the twelfth grade, and has past relevant work as a lubrication technician (Tr. 28, 158). The claimant alleges that she has been unable to work since September 15, 2007, due to bipolar disorder, post-traumatic stress disorder (PTSD), seizures, high blood pressure, obsessive compulsive disorder, anxiety, and plantar fasciitis (Tr. 157).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 9, 2010. Her application was denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 17, 2011 (Tr. 12-29). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: (i) as a seizure precaution, she should not work in hazardous environments; and (ii) she can perform simple, unskilled tasks, but not complex, skilled tasks (Tr. 18). The ALJ continued,

-3-

stating, "In other words, I find that the claimant has no physical, work-related, functional limitations, and that she retains the functional capacity to perform a wide range of unskilled tasks and semi-skilled tasks at all exertional levels" (Tr. 18). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, price marker, cafeteria attendant, or ticket seller (Tr. 29).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate her RFC in relation to her nonsevere impairments, (ii) by failing to properly evaluate the treating physician opinion of Dr. Fabio Mota, and (iii) by failing to properly assess her credibility. The Court finds the claimant's second contention persuasive.

The claimant had the severe impairments of seizure disorder, bipolar disorder, panic disorder without agoraphobia, and PTSD, along with the nonsevere impairments of hypertension, sensorineural hearing loss, mild obstructive respiratory disease, and spinous process (Tr. 14). Medical records reflect that Dr. Mota treated the claimant at Carl Albert Hospital dating back to at least 2008 (Tr. 354). He treated her for various ailments and also, as relevant, adjusted her seizure medications as necessary (Tr. 404, 411, 418-419, 422, 500-502). On August 9, 2010, Dr. Mota noted an increase in tonic clonic activity but no LOC, at the same time the claimant reported an increase in anxiety due to her past childhood trauma (Tr. 504). Her seizure medication still needed adjustment in December 2010, and Dr. Mota noted that the claimant spent most of the visit discussing her childhood trauma (Tr. 512). In March 2011, Dr. Mota noted that the

claimant's grand mal seizure disorder was poorly controlled, and although he noted that the claimant's daughter reported multiple episodes of full-body jerking, he then stated that they fortunately were not happening often (Tr. 524). On May 6, 2011, the claimant was in the Chickasaw National Medical Center Emergency Room and a seizure was witnessed, but the notation indicates that it was of "questionable origin" (Tr. 538).

Dr. Mota also completed a physical medical source statement for the claimant on July 8, 2011, and stated that his opinion was for the period beginning that day through November 2011 (Tr. 541). He indicated in his opinion that the claimant could lift/carry ten pounds frequently, stand/walk one hour continuously and less than two hours out of an eight-hour workday, and sit one hour continuously and less than two hours out of an eight-hour workday (Tr. 540). He further indicated that the claimant was required to lie down during the workday to manage pain, and that she was limited in pushing and pulling. As to other physical factors, he indicated that the claimant could never climb, balance, stoop, kneel, crouch, crawl, and reach; could occasionally handle and finger; and could frequently feel (Tr. 541). He further indicated that the claimant had environmental restrictions. He ascribed her limitations to grand mal seizures and tonic-clonic convulsions (Tr. 541).

On August 9, 2011, Dr. Kevin Wood, who was board certified in adult neurology, completed a referral from Dr. Mota regarding the claimant's reported uncontrollable seizures. After taking the claimant's history, Dr. Wood's impression was that the claimant's episodes of bilateral jerking while awake were "almost certainly not electrical seizures" and he suspected that most of the reported daily seizures were actually pseudo-

seizures in light of the claimant's mental impairments (Tr. 550). Following a "frank discussion," Dr. Wood noted that some patients can have a mixture of genuine and pseudo-seizures, which made them difficult to "sort out" (Tr. 550). A regular EEG done the same day was "probably normal" but indicated that it did not preclude a seizure disorder (Tr. 551). Dr. Wood thus recommended three-day EEG video monitoring, no medication changes, and a current MRI (Tr. 550). There are no further test results in the record.

The claimant also received treatment for her mental impairments at Mental Health and Substance Abuse Centers of Southern Oklahoma. She was diagnosed with bipolar disorder mixed with psychotic features and PTSD, and assessed a global assessment of functioning score of 49 on intake on January 23, 2008 (Tr. 262). This was the lowest GAF score in the record, with others ranging up to 70 in August 2010 by a consultative examiner (Tr. 452). There are repeated references in the record to the claimant's childhood history of abuse and that it had continued to affect her as an adult (Tr. 264, 271, 328, 451).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony as well as the evidence contained in the medical record (Tr. 14-28). As to Dr. Mota's opinion, the ALJ recited the limitations indicated in the MSS, then gave it "little weight because it is not at all supported by the objective medical evidence, particularly his own treating notes which contain mostly normal objective findings on repeat examination, and do not support anywhere near the degree of limitation he assessed" (Tr. 25). The ALJ also recited Dr. Wood's findings and his recommendation for further testing, but largely

used Dr. Wood's assessment (the suspected disparity between genuine and pseudo-seizures) to find the claimant's allegations not credible and did not assess Dr. Wood's opinion with a weight (Tr. 20-21).

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Likewise, the opinions of

physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record as to the claimant's continued treatment for seizures and mental impairments. The ALJ's conclusion that the opinions expressed by Dr. Mota were inconsistent with other medical evidence in the record would have been a legitimate reason for refusing to give them controlling weight if the ALJ had specified the inconsistencies to which he was referring. *See, e.g., Langley,* 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300. *See also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are.") [citation omitted]. Instead, the ALJ simply declined to

give it controlling weight because it was not fully consistent with unspecified medical evidence of record. *See Langley,* 373 F.3d at 1119. The ALJ thus improperly evaluated Dr. Mota's MSS opinion.

The ALJ further improperly evaluated Dr. Wood's opinion by failing to assess it under the proper criteria and mischaracterizing his findings. While Dr. Wood indicated that the claimant's seizures were likely not – at least entirely – electrical in nature, he recommended further testing to determine the root cause. The ALJ used this statement as support for finding the claimant not credible. But ruling out one cause of a symptom or impairment does not mean that a symptom or impairment does not exist; it simply rules out one possible reason out of many. Evidence from Dr. Wood, Dr. Mota, and elsewhere in the record contain references to the possibility that the claimant's physical impairment of seizures was perhaps related to or derived from her mental impairments. While mentioned in the record, the ALJ only discussed each impairment separately and did not consider how the "cumulative effect of claimant's impairments," at step four would have affected her RFC, *see Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), and it is not for this Court to make those conclusions for the ALJ. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the

Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence, and consider recontacting the claimant's treating physicians, requesting further medical records, and/or ordering a consultative examination. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). An ALJ has broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Although an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record, *see Hawkins*, 113 F.3d at 1168, such an examination would have been helpful in this case to clarify the nature of her seizures along with a more specific prognosis and assessment of her functional limitations when all her impairments were considered in combination. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-

determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 26th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**